**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LINDA MCDAVID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-02699-SHM-cgc |
| | ) | |
| ALDI, INC., JANE/JOHN DOE 1, | ) | |
| and JANE/JOHN DOE 2, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendant ALDI, Inc.'s February 9, 2017 Motion for Summary Judgment (the "Motion"). (ECF No. 18 at 64.[1]) Plaintiff Linda McDavid responded on June 2, 2017. (ECF No. 40 at 147.) ALDI replied on June 13, 2017. (ECF No. 41 at 165.)

For the following reasons, the Motion is DENIED.

**I.  Background**

McDavid brings this premises liability action against ALDI for injuries she alleges she sustained from a fall while shopping in one of ALDI's stores on July 14, 2015. At the time of the fall, McDavid was shopping on the left-hand side of the frozen-foods aisle, where grocery items were displayed behind

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

large glass doors.[2]  The aisle was 102.5 inches wide (about 8.5 feet), but there was a center-aisle display in the part of the aisle where McDavid was shopping.  (ECF No. 18-1 ¶ 4 at 68.) ALDI had arranged several 40-by-45-inch wooden pallets and boxes end-to-end down a portion of the center of the aisle, with the 45-inch sides of the pallets running parallel with the aisle. (Id. ¶ 5 at 68.)  On the pallet nearest McDavid at the time of her fall, ALDI had stacked five or six boxes horizontally on top of one another, each measuring about 3-feet-by-3-feet and several inches thick.

McDavid pushed her shopping cart forward so that she could open one of the glass doors to remove some frozen chicken.  (ECF No. 40-3 at 160, 163.)  The space between the side of the aisle and the edge of the center-aisle display was approximately 3 feet.  (See ECF No. 18-1 ¶¶ 4-7.)  McDavid opened the door, which extended approximately 2 feet into the aisle.  (Id.) While holding the door open with her body, McDavid bent forward, removed one bag of chicken, stood erect for several seconds, and reached back into the unit to remove a second bag.  (ECF No. 40-3 at 161.)

As she straightened up a second time, McDavid stepped backward, allowing the door to close.  (Id. at 160.)  When she

---

[2] The facts relevant to ALDI's Motion are based on documentary evidence and on video footage of the incident from the store's video surveillance system.  (See ECF No. 18-1 ¶ 3 at 67.)

did so, her foot hit part of the center-aisle display, and she fell backward into the display, causing several of the boxes to topple over. (ECF No. 18-2 at 77; ECF No. 40-3 at 160.) McDavid landed on her buttocks atop two of the boxes, which remained on the pallet. (ECF No. 40-3 at 162.)

McDavid testified at her deposition that, when she tried to get up, her foot got caught in an exposed part of the pallet, her foot twisted, and she fell a second time.[3] (ECF No. 18-2 at 76, 79; ECF No. 40-3 at 160-63.) She testified that she fell stomach- or face-down onto the floor. (Id.)

When asked whether she knew that the boxes "were there before the accident," McDavid testified that she did and that she had to push her shopping cart forward to open the freezer door because the "aisle was very narrow." (ECF No. 40-3 at 163.) Her deposition testimony reflects the following exchange:

> Attorney: You knew that before you fell?
>
> McDavid: Yeah, I did.  So when I came out of the freezer, not paying attention I guess, whatever, I don't know, and I fell.
>
> Attorney: Was it a case of just misjudging and backing into the boxes in the first place?

---

[3] The video appears to contradict McDavid's testimony that she fell a second time.  The Sixth Circuit has held that, normally, "witness accounts seeking to contradict an unambiguous video recording do not create a triable issue." Shreve v. Franklin Cnty., 743 F.3d 126, 132 (6th Cir. 2014) (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007)).  ALDI, however, "accept[s] as true" McDavid's version of events for purposes of its Motion. (ECF No. 41 at 165.)

McDavid:   I don't know if that is a good answer.  I
just didn't pay attention.  I don't know.  I
don't know how to explain that part of the
fall.  I don't know if I misjudged it or
measured or I just said I can't go this far,
I didn't do that.  I am shopping.

(Id.)

ALDI represents that "there have been no personal injury lawsuits filed against the store involved in this case, or arising out of accidents at that store, within the five years preceding the accident that is the subject of this case." (ECF No. 18-3 at 81.)  ALDI represents that, with the exception of a 2013 incident where "a customer bumped into a pallet in the checklane area and knocked it onto another customer's left foot," "there were no accidents at the subject store that involved persons backing into center-aisle displays or that were otherwise similar to the accident in this case" within the five years preceding the incident in this case.  (Id. at 82.)  The record does not show how long the center-aisle display into which McDavid fell, or one like it, had been set up in the ALDI store before the incident.

## II.  Jurisdiction and Choice of Law

Under 28 U.S.C. § 1332(a), this Court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C.

§ 1332(a)(1).  McDavid is a citizen of Tennessee.  (ECF No. 1 at 1.)  ALDI is an Illinois corporation with its principal place of business in Illinois.  (Id.)  McDavid seeks damages in excess of $75,000.  (Id.)  The parties are completely diverse, and the amount-in-controversy requirement is satisfied.

In a diversity action, state substantive law governs.  See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a "choice of law" analysis *sua sponte*.  See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998).  Tennessee substantive law applies.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party can meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case.  See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. App'x 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. <u>See</u> Fed. R. Civ. P. 56(c). "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her." <u>EEOC v. Ford Motor Co.</u>, 782 F.3d 753*,* 760 (6th Cir. 2015) (quotation marks omitted). The nonmoving party must do more than simply "'show that there is some metaphysical doubt as to the material facts.'" <u>Adcor Indus., Inc. v. Bevcorp, LLC</u>, 252 F. App'x 55, 61 (6th Cir. 2007) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. <u>See</u> <u>Beckett v. Ford</u>, 384 F. App'x 435, 443 (6th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 324). Instead, the nonmoving party must adduce concrete evidence on which a reasonable juror could return a verdict in her favor. <u>Stalbosky v. Belew</u>, 205 F.3d 890, 895 (6th Cir. 2000); <u>see</u> Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. <u>See</u> Fed. R. Civ. P. 56(c)(3); <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are

designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

A "party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." <u>FTC v. E.M.A. Nationwide, Inc.</u>, 767 F.3d 611, 630 (6th Cir. 2014) (quoting <u>Smith v. Hudson</u>, 600 F.2d 60, 64 (6th Cir. 1979)). "[E]ven where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." <u>Id.</u>

## IV. Analysis

ALDI moves for summary judgment on two grounds: (1) "it owed no legal duty to the plaintiff to prevent her from backing into a display located in the center of the store aisle, which was in plain sight and which the plaintiff saw or should have seen before she backed into it"; and (2) "no reasonable factfinder could conclude that the plaintiff was less than 50% at fault, barring any recovery on her part." (ECF No. 18 at 64.)

### A.    Duty of Care

To prevail on a negligence claim in Tennessee, a plaintiff must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993). "The duty element is a question of law requiring the court to determine 'whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.'" Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998) (quoting Bradshaw, 854 S.W.2d at 870). "In analyzing duty, the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm." Id. "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995).

"In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises." Rice, 979 S.W.2d at 308. "The duty includes the responsibility to remove

or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." Id. In Tennessee, the "owner's superior knowledge of conditions on the premises" has served as the "traditional rationale for imposing this duty," but "a duty may exist even where the injury-causing condition is alleged to be 'open and obvious' to the plaintiff." Id.

"[R]elevant considerations" that bear on whether a premises owner owes a duty of care to protect invitees from an open-and-obvious condition include "[w]hether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm." Coln v. City of Savannah, 966 S.W.2d 34, 42 (Tenn. 1998), overruled on other grounds by Cross v. City of Memphis, 20 S.W.3d 642 (Tenn. 2000). "'Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.'" Id. at 41 (quoting Restatement (Second) of Torts § 343(A), cmt. a). "[I]f the foreseeability and gravity of harm posed from a defendant's

conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care." Id. at 43.

"The existence and scope of the duty of the defendant in a particular case rests on all the relevant circumstances, including the foreseeability of harm to the plaintiff and other similarly situated persons." Leatherwood v. Wadley, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003) (citing Pittman v. Upjohn Co., 890 S.W.2d 425, 433 (Tenn. 1994)). "Assuming a duty of care is owed, be it a duty to refrain from creating a danger or a duty to warn against an existing danger, it must then be determined whether a defendant has conformed to the applicable standard of care, which is generally reasonable care under the circumstances." Coln, 966 S.W.2d at 39. "[W]hether the defendant breached its duty and whether the breach proximately caused the injury are generally questions decided by the trier of fact." Kelley v. Johnson, 796 S.W.2d 155, 157 (Tenn. Ct. App. 1990), abrogated on other grounds by McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992).

In this case, the alleged injury-causing condition was open and obvious to customers walking down the aisle. The part of the display into which McDavid fell consisted of five or six stacked boxes standing several feet tall, placed on a 40-by-45-inch wooden pallet in the center of the aisle. Just as McDavid

noticed the display when initially approaching it, the risk created by the display would have been obvious to a typical customer approaching the display who was "exercising reasonable perception, intelligence, and judgment." Coln, 966 S.W.2d at 42.

Although a store like ALDI might typically expect that a customer would recognize, and thereby avoid, any danger posed by such a center-aisle display, here there was "some other reason" ALDI could have foreseen the risk of harm the display posed. See id. ALDI had reason to expect that its customers' attention might be distracted because "a store competes for the customer's attention by encouraging her to look at and purchase items for sale." Foster v. Wal-Mart Stores East, LP, No. 3-11-0367, 2012 WL 3027843, at *3 (M.D. Tenn. July 23, 2012); see also Huegel v. Target Corp., No. 3:15-cv-550, 2017 WL 745589, at *5 (M.D. Tenn. Feb. 27, 2017) ("Presumably, Target could reasonably anticipate that customers in the Franklin store would be focused on the products on the shelves, as Mrs. Huegel testified she was, rather than on the floor of the store's aisles."). It would have been foreseeable that a customer in McDavid's position, distracted by merchandise in the freezer unit as McDavid was, might momentarily forget about the display that she had discovered. See Coln, 966 S.W.2d at 41. For a customer in McDavid's position, the risk and gravity of harm posed by the

display was heightened by the narrowness of the space between the display and the glass windows.[4]  ALDI has not produced any evidence showing that it would have been burdensome to alter the placement or set-up of the display to mitigate the risk or gravity of harm.  Because the "foreseeability and gravity of harm" posed by ALDI's center-aisle display "outweighed the burden" on ALDI "to engage in alternative conduct to avoid the harm," ALDI had a duty to act with reasonable care.  Id. at 43.

ALDI argues that courts in analogous cases have found no duty and granted summary judgment in defendants' favor where an allegedly dangerous condition was in "plain sight."  (ECF No. 20 at 92-94.)  ALDI relies on Foster.  In Foster, a shopper was "smelling Lysol products displayed on the left-hand side of the endcap at the end of a shopping aisle" in a Wal-Mart store.  2012 WL 3027843, at *1.  The shopper "walked 'pretty quick' to the other side of the endcap to sample products" and "tripped over a wooden pallet on the floor" that was "painted bright blue" and measured "four feet by three feet."  Id.  The court held that the store owed no duty of care to protect a customer from the pallet where the plaintiff failed to show that the

---

[4]  ALDI argues that there is no expert testimony that the dimensions of the aisle, even with the display, violated industry standards or were otherwise unsafe.  (ECF No. 41 at 166.)  ALDI cites no authority that, in a premises liability case, expert testimony is required before a legal duty may be recognized or before a jury may find that a premises owner breached that duty.

store "would reasonably foresee that a customer would trip over a pallet located in close proximity to her." Id. at 4. The court explained that "any risk to the plaintiff from the placement of the pallet in the aisleway should have been obvious to a customer exercising reasonable perception, intelligence, and judgment." Id. (citing Coln, 966 S.W.2d at 43). The court emphasized that, "at the time [the plaintiff] tripped and fell, she was not looking at merchandise on high shelves but rather was moving from her initial location at the endcap to the other side of the endcap." Id. The court noted that the "plaintiff simply failed to look down as she quickly moved to the other side of the endcap." Id.

In Arrambide v. Wal-Mart Stores, Inc., a case similar to Foster, a customer shopping in the lawn-and-garden section of a Wal-Mart store "was attracted by some pots," but "[t]o reach the pots, [she] had to leave her cart at the end of the aisle because the aisle was too narrow" due to the placement of a pallet in the center of the aisle. 33 F. App'x 199, 200 (6th Cir. 2002). "After leaving her cart, she walked by [the] pallet and through the aisle to look at the pots." Id. While "[r]eturning to her shopping cart," she tripped over the pallet and fell. Id. The court held that the store owed no duty of care to protect a customer from the pallet where the "foreseeability and gravity of harm [was] minimal because the

13

narrowing of the aisle was open and obvious" and where the plaintiff "actually observed the narrowing of the aisle and the placement of the pallet as evidenced by her decision to leave her shopping cart at the end of the aisle and to walk around the pallet the first time."  Id. at 201.  The court explained that the plaintiff was "sufficiently aware of the pallet's existence and familiar with its placement for her to reasonably avoid any harm associated with the placement of the pallet on the floor." Id. at 201-02.

Other courts, however, have found that a store owed a duty of care to protect shoppers from obstructions in an aisle.  In Read v. Home Depot USA, Inc., a customer walked down an aisle at a Home Depot store behind her sister and daughter where "over 200 ceiling light fixtures (chandeliers) . . . were hung 18 feet above the floor in what was described as a light cloud which extended the entire length of the aisle."  No. 01A01-9803-CV-00121, 1998 WL 721084, at *1 (Tenn. Ct. App. Oct. 15, 1998).  There was a "stack of cartons" in the aisle "high enough to be readily visible, but one carton, which was on the floor of the aisle, was longer than the rest and protruded into the aisle a few inches further than the other cartons."  Id.  While "[a]ll three ladies were looking at the lighted chandeliers overhead," the shopper "did not see the carton protruding into the aisle further than the stack" and she "tripped over it, fell and was

injured." Id. The court held that the "presence of the 'cloud of light' for the express purpose of attracting the attention of customers placed a special duty of care upon the defendant to provide safety for the customers whose attention was diverted from their pathway to the ceiling." Id. at *2. The court explained that the store "employees having the assigned duty to promptly clear the aisle of cartons by placing them on shelves, knowing that the cartons were in the aisle, failed to perform their duty by leaving the cartons in the aisle while they went to lunch." Id. The court explained further:

> The diversion of her attention to the ceiling, the obstruction of her view of the floor by her companions she was following, and the fact that a carton over which she tripped was protruding further into the aisle than the stack of cartons, all mitigate or remove any fault of the plaintiff which might be found under other circumstances.

Id.

In Fox v. Food Lion, Inc., Store #539, a customer in a grocery store walked down the right-hand side of an aisle and "stopped and picked up a box of crackers and began reading the label on the box." No. E1911-00015-COA-R3-CV, 2000 WL 1424805, at *1 (Tenn. Ct. App. Sept. 21, 2000). "After a few steps, she looked up and saw several 12-pack cases of soft drinks stacked on the floor against the shelves on the other side" of the aisle. Id. "As she began walking toward these stacked cases, she tripped and fell over an empty wooden display base,

fracturing her hip." Id. "The subject display base was approximately eight feet long, three feet wide, and six inches high and was "located between two displays of merchandise in the center of the aisle." Id. The court rejected the store's argument that it owed no duty of care under the circumstances, explaining:

> Even if the subject display base was "open and obvious," . . . such a condition would not necessarily relieve Food Lion of a duty of care to its customers. See [Coln, 966 S.W.2d at 43]. A premises owner's duty may arise, despite the obviousness of the dangerous condition, if the owner "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Id. at 41 (quoting Restatement (Second) of Torts, § 343A (comment f)). We find that Food Lion had reason to expect that the attention of a customer such as Fox would be distracted; Linda Ellison, the defendant's customer service manager, acknowledged as much when she testified that merchandise is placed on shelves and on displays for the purpose of attracting the attention of customers. Furthermore, a grocery store should reasonably expect customers to inspect and read items while they are shopping. Thus, even if Fox had been reading a box of crackers when she fell -- a theory unsupported by the evidence in this case -- her injuries were not unforeseeable. On the contrary, we find that the plaintiff's fall and resulting injuries were entirely foreseeable.

Id. at 4.[5]

As illustrated by these decisions, Tennessee courts tend to find that stores owe a duty of care to protect shoppers against

---

[5] The court also noted that the store's own safety policies and procedures acknowledged the "potential hazard of leaving a display base empty." Fox, 2000 WL 1424805, at *4.

the risk of harm posed by open-and-obvious conditions where it is reasonably foreseeable that customers will be distracted by the store's merchandise and fail to notice the condition. The light fixtures in <u>Read</u> imposed a "special duty of care" upon the store to "provide safety for the customers whose attention" might be "diverted from their pathway to the ceiling." 1998 WL 721084, at *2. Similarly, in <u>Fox</u>, the plaintiff's "injuries were not unforeseeable" even had she, in fact, "been reading a box of crackers when she fell," because "a grocery store should reasonably expect customers to inspect and read items while they are shopping." 2000 WL 1424805, at *4. In such circumstances, "the foreseeability and gravity of harm posed from [the] defendant's conduct, even if 'open and obvious,' outweigh[s] the burden on the defendant to engage in alternative conduct to avoid the harm," creating "a duty to act with reasonable care." <u>Coln</u>, 966 S.W.2d at 43.

Decisions like <u>Arrambide</u> and <u>Foster</u> do not contradict that premise. In those cases, the plaintiff-customers tripped over objects in the aisle, not because they were distracted by merchandise, but because they simply were not paying attention. See <u>Arrambide</u>, 33 F. App'x at 200; <u>Foster</u>, 2012 WL 3027843, at *4. In neither case was the court required to determine whether the store owed a duty of care to protect shoppers distracted by merchandise from the risk of harm posed by an open-and-obvious

condition.  Those customers were not distracted by merchandise when they fell.[6]

ALDI points out that McDavid acknowledges having noticed the center-aisle display before she opened the freezer door and that she has "herself attributed [her] action" of backing into the display "to a lack of attention" on her part.  (ECF No. 20 at 93-94.)  Tennessee courts have recognized that whether a "danger was known and appreciated by the plaintiff" is a "relevant consideration[]" in determining duty when there is an "open and obvious" condition.  Coln, 966 S.W.2d at 42; see, e.g., Arrambide, 33 F. App'x at 201-02 ("[Plaintiff] was sufficiently aware of the pallet's existence and familiar with its placement for her to reasonably avoid any harm associated with the placement of the pallet on the floor."); cf. Green v. Roberts, 398 S.W.3d 172, 181-82 (Tenn. Ct. App. 2013) (explaining that "a plaintiff in a premises liability case has a duty to see what is in plain sight," and noting that the plaintiff "could have noticed what was near her feet, or she

_____

[6] ALDI also relies on Green v Roberts, 398 S.W.3d 172 (Tenn. Ct. App. 2013), but that decision is factually distinguishable.  In Green, plaintiff tripped over a steel post in a parking lot. Id. at 174.  Plaintiff was not a shopper who tripped over a display piece or similar object in the aisle of a store.  There was no allegation in Green that the premises owner placed anything in the parking lot that distracted the plaintiff or competed for her attention.

could have refrained from stepping backwards without looking where her foot would land").

That McDavid initially noticed the center-aisle display is not dispositive. Coln recognized that a premises owner might owe a duty of care to invitees when there is an open-and-obvious condition if the owner "has reason to expect that the invitee's attention may be distracted, so that he . . . will forget what he has discovered." 966 S.W.2d at 41. Unlike Arrambide, the evidence here creates a reasonable inference that, at the moment she fell, McDavid was not aware of the precise location of the center-aisle display behind her, an awareness that otherwise might have allowed her to reasonably avoid the potential harm associated with the display. Unlike the customer in Arrambide, McDavid was distracted by merchandise at the moment she fell. Viewing the evidence in the light most favorable to McDavid, it is reasonable to conclude that she did not know and appreciate the danger associated with the display because, after having been distracted by merchandise, she forgot what she had discovered. See id., at 41-42.

Although there is evidence that McDavid was not "pay[ing] attention" (ECF No. 40-3 at 163), and although premises owners can reasonably expect invitees to be reasonably attentive, see Foster, 2012 WL 3027843, at *4; Green, 398 S.W.3d at 181-82, that evidence also must be viewed in the light most favorable to

McDavid. Her admission that she "just didn't pay attention" when she backed away from the freezer is consistent with her testimony that she did not "know how to explain that part of the fall" because she was "shopping." (ECF No. 40-3 at 163.) That McDavid was distracted by merchandise explains why she did not pay attention to what was behind her. A jury could reasonably draw that inference.

ALDI contends that "the defect complained of was part and parcel of the display of merchandise within the store." (ECF No. 20 at 94.) It argues that, "[t]o hold that [ALDI] breached a duty here would be tantamount to holding that a merchant can never set up a display in the center of a wide aisle." (Id.) ALDI argues that "[s]uch a holding would run afoul of the well-established rule of Tennessee law that a premises owner is not an insurer of the safety of its patrons and would essentially create strict liability on the part of an owner any time a patron failed to see and appreciate a display that is open and obvious." (Id.)

The question before the Court is not whether ALDI is liable as a matter of law for injuries to McDavid that may have been caused by the particular center-aisle display in this case, nor whether stores are strictly liable for injuries arising from center-aisle displays generally. The Court does not hold that ALDI breached its duty of care in this case. The question is

whether ALDI owed customers like McDavid a duty of care, a duty that arose because the foreseeability and gravity of harm posed by ALDI's maintenance of the center-aisle display outweighed the burden on ALDI to engage in alternative conduct to avoid the harm. Having determined, on the facts of this case, that ALDI owed a duty of care to customers like McDavid, it is for the jury to decide whether ALDI breached that duty with respect to the particular display at issue and whether any breach by ALDI was the cause of McDavid's injuries. See Kelley, 796 S.W.2d at 157.

Because ALDI owed McDavid a duty of care, its Motion on this ground is DENIED.

## B. Comparative Fault

Relying on Green, ALDI contends that, even if it owed McDavid a duty of care, "no reasonable jury could find under the undisputed facts in this case that the plaintiff was anything less than 50% at fault." (ECF No. 20 at 95.) Under Tennessee's comparative fault system, a plaintiff may recover damages "reduced in proportion to the percentage of the total negligence attributable to the plaintiff," but only if the "plaintiff's negligence remains less than the defendant's negligence." McIntyre, 833 S.W.2d at 57. Green explained that, "[w]hile comparative fault is typically a question for the trier of fact, summary judgment is appropriate in those situations where

reasonable minds could only conclude that the plaintiff's fault was equal to or greater than the fault of the defendant." 398 S.W.3d at 178 (quotation marks and alteration omitted). ALDI argues that reasonable minds could not differ and that McDavid was at least 50% at fault. (ECF No. 20 at 95.)

Tennessee courts sometimes consider whether the plaintiff was paying attention as part of the duty analysis. ALDI acknowledges that, in both Green and Foster, the court did not reach the issue of comparative fault at summary judgment because there was no duty of care. ALDI cites no case where a court has held that there was a duty of care and granted a premises owner's motion for summary judgment on the ground of comparative fault. Here, there are several facts based on which a jury might conclude that McDavid was less than 50% at fault for any injuries caused by the fall, including that McDavid was distracted by merchandise when she fell. Questions of comparative fault are usually reserved for the jury. See Green, 398 S.W.3d at 178. The facts of this case do not warrant departure from that rule.

ALDI's Motion on this ground is DENIED.

V.   **Conclusion**

For the foregoing reasons, ALDI's Motion is DENIED.


So ordered this 10th day of July, 2017.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE